UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/20/2019___
```

-------------------------------------------------------------X

NICOLE BURGESS,                        :
                                       :
                          Plaintiff,   :
                                       :
            -against-                  :           18-CV-6584 (VEC)
                                       :
                                       :             ORDER
PETER GOODMAN, PG EAST HOUSTON         :
CORP., 203 HENRY STREET REALTY CORP.,  :
288 MULBERRY STREET REALTY CORP.,      :
TOURBILLION47 LLC, HAROLD THOMAS       :
CARTER, IGNACIO MATTOSNOYA, MARK       :
CONNELL, AND BEA'S TAVERN, INC.,       :
                                       :
                         Defendants.   :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

    This action, which asserts claims under the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12182(a); the New York City Human Rights Law ("NYCHRL"), N.Y.C Admin. Code

§ 8-107(4)(a); and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law

§ 296(2)(a), was filed on July 22, 2018. *See* Dkt. 1. On January 8, 2019, this Court ordered

counsel for Plaintiff, Stuart Finkelstein, Esq., to show cause why this case should not be

dismissed for failure to prosecute under Fed. R. Civ. P. 41(b) because Mr. Finkelstein has lost all

contact with his client. *See* Dkt. 62. For the following reasons, this case is dismissed with

prejudice under Fed. R. Civ. P. 41(b).

## BACKGROUND

    In a December 17, 2018 order, the Court ordered Mr. Finkelstein to show cause why this

case should not be dismissed with prejudice under Fed. R. Civ. P. 37(b)(2)(A)(v), and, regardless

of whether the case is dismissed, why other sanctions should not be imposed under Fed. R. Civ.

P. 37(b) generally, 28 U.S.C. § 1927, or the inherent powers of this Court because of Mr.

Finkelstein's repeated and well-documented failures to produce a valid, HIPAA-compliant medical-records release from his client consistent with this Court's orders. *See* Dkt. 57; *see also* Dkt. 52 (order recounting in detail Mr. Finkelstein's prior history of failing to comply with discovery orders in this and other cases). The order to show cause specified that "Mr. Finkelstein's response must include affidavits from him and from [his client] Ms. Burgess stating what steps each person took to comply with the Court's Order relative to production of a HIPAA release." Dkt. 57 at 3.

On December 26, 2018, in response to the Court's order, Mr. Finkelstein submitted an affidavit and memorandum of law stating, among other things, that "Plaintiff has been unavailable for [him] to obtain her authorization for her medical records"; that since the November 9, 2018 initial pretrial conference in this matter, Mr. Finkelstein has "been unable to communicate with Plaintiff and therefore unable to secure the medical authorization"; and that although "[i]t would certainly be in the case's best interest to comply," Mr. Finkelstein was "unable to do so at this point in time." Dkt. 59 at 1-2. Moreover, despite the order's explicit instruction that Mr. Finkelstein submit an affidavit from his client explaining her involvement— if any—in Mr. Finkelstein's handling of this case, Mr. Finkelstein submitted no such affidavit. "Disturbed that Mr. Finkelstein ha[d], apparently, seen fit to prosecute this case when he ha[d] lost the ability to communicate and consult with his client and ha[d] done so without informing either the Court or his adversary," the Court ordered Mr. Finkelstein to submit an affidavit, signed under penalty of perjury, specifying (1) when he last had contact with Plaintiff Burgess and (2) precisely what efforts he had made to contact her since their last communication. *See* Dkt. 60 at 2. The Court's order warned that vague statements—e.g., "Plaintiff has been unavailable for me to obtain her authorization for her medical records"—would be insufficient. *Id.*

In response to the Court's order, Mr. Finkelstein submitted a sworn affidavit stating only that his "last contact with Plaintiff Burgess was the last week of November, 2018"; that "[s]ince that time," he has "been unable to communicate with Plaintiff Burgess"; and that he has "called Plaintiff Burgess and her phone number is not working and have [*sic*] been unable to speak with her." Dkt. 61. The Court therefore ordered Mr. Finkelstein to show cause why this case should not be dismissed under Fed. R. Civ. P. 41(b) because Mr. Finkelstein has lost all contact with his client. *See* Dkt. 62.

Mr. Finkelstein submitted a memorandum of law and sworn affidavit in response to that order, *see* Dkt. 63; Defendants, pursuant to the order, submitted their own papers and exhibits in support of dismissal (styled as a motion to dismiss under Rule 41(b)), *see* Dkts. 64-68; and Mr. Finkelstein submitted a final round of briefing and documents in reply, *see* Dkt. 71. Mr. Finkelstein's submissions offered no further facts regarding his attempts to reach his client; they did, however, reveal that after having lost contact with Ms. Burgess, he signed a stipulation dismissing with prejudice another ADA case brought in her name that had been pending before another judge of this Court. *See* Dkt. 63 ex. 1; *see also* Stipulation of Dismissal [Dkt. 49], *Burgess v. Jakobsen*, No. 18-CV-5001 (S.D.N.Y. Jan. 4, 2019).[1]

## DISCUSSION

Fed. R. Civ. P. 41(b) provides that "[i]f the plaintiff fails to prosecute . . . , a defendant may move to dismiss the action or any claim against it." "Although [Rule 41(b)'s] text . . . expressly addresses only the case in which a defendant moves for dismissal of an action, it is

---

[1]      On January 29, 2019, Mr. Finkelstein filed a stipulation voluntarily dismissing with prejudice another ADA lawsuit, also filed in Ms. Burgess's name, pending before the undersigned. *See* Stipulation of Dismissal [Dkt. 47], *Burgess v. Two Charlton Owners Corp.*, No. 18-CV-5955 (S.D.N.Y. Jan. 29, 2019). And on February 8, 2019, he filed a stipulation voluntarily dismissing without prejudice yet another ADA lawsuit filed in Ms. Burgess's name pending before another Judge of this Court. *See* Stipulation of Dismissal [Dkt. 40], *Burgess v. Sixth St. Assocs.*, No. 18-CV-7405 (S.D.N.Y. Feb. 8, 2019).

unquestioned that [it] also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). Rule 41(b) does not define "failure to prosecute," but "[i]t can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics"— for example, "groundless motions, repeated requests for continuances or persistent late filings of court ordered papers." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42-43 (2d Cir. 1982). "Such conduct may warrant dismissal after merely a matter of months." *Id.* And a Plaintiff's total absence from the litigation—whether she is represented by counsel or not—may constitute failure to prosecute possibly warranting Rule 41(b) dismissal where her failure to comply with court orders, or her failure to cooperate with her counsel in effecting such compliance, delays litigation brought in her name.

Because dismissing a case for failure to prosecute is a harsh remedy, the Second Circuit has laid out several factors this Court must analyze before dismissing a case under Rule 41(b). *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). In particular, the Court must consider whether (1) "the plaintiff's failure to prosecute caused a delay of significant duration"; (2) "plaintiff was given notice that further delay would result in dismissal"; (3) "defendant [is] likely to be prejudiced by further delay"; (4) the "need to alleviate court calendar congestion" outweighs the "plaintiff's right to an opportunity for a day in court"; and (5) "lesser sanctions [are] sufficient to remedy any prejudice resulting from plaintiff's delay." *Id.* at 254, 257. After considering these factors, the Court concludes that dismissing this case with prejudice is the appropriate sanction.

1. Duration of Delay Caused by Plaintiff's Failure to Prosecute

This first factor "breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." *Drake*, 375

F.3d at 255. There is no question that the "failure to prosecute" here—Plaintiff's complete absence from the case and Mr. Finkelstein's consequent inability to produce a valid, HIPAA-compliant medical-records release from her, as this Court long ago directed—is Plaintiff's. According to Mr. Finkelstein, he has been unable to reach Plaintiff since the last week of November 2018, and "her phone number is not working." Dkt. 61. Moreover, although Plaintiff (presumably) consented to the filing of this lawsuit in mid-July 2018, *see* Dkt. 1, and four other lawsuits in this district around the same time, *see* Dkt. 57 at 3 n.1, as of the date of this order she has not contacted this Court or, to this Court's knowledge, Mr. Finkelstein. Taking Mr. Finkelstein's sworn submissions as true, the Court concludes that Plaintiff has lost interest in prosecuting this case and that her "side was at fault" in causing Mr. Finkelstein's inability to obtain a medical-records release. *Drake*, 735 F.3d at 255.

This failure to prosecute, moreover, has been lengthy. Assuming that Plaintiff's last contact with Mr. Finkelstein was November 30, 3018, Plaintiff has been absent from this litigation—and her medical-records release has been overdue—for nearly twelve weeks. *See* Dkt. 57 at 1-2 (explaining that Court's initial case-management plan set a November 29, 2018 deadline for production of a medical-records release; deadline was subsequently extended to December 13, 2018 after Defendants reported on December 3, 2018 that Plaintiff had failed to meet the November 29 deadline). Although a twelve-week delay may not always qualify as a "significant" one, *Drake*, 375 F.3d at 255, here the delay portends to be interminable: Plaintiff has by all indications abandoned her lawsuit; the only phone number in her lawyer's possession has purportedly been disconnected; and she has left no other contact information with the Court or her lawyer (or so the Court infers from Mr. Finkelstein's submissions). Given these circumstances, the Court concludes that the duration of Plaintiff's failure to prosecute is "significant" for Rule 41(b) purposes. *See, e.g.*, *Gone v. Wackenhut Servs., Inc.*, No. 10-CV-

2495, 2011 WL 2610550, at *2 (S.D.N.Y. June 17, 2011) ("The Second Circuit has not

established an exact period of time which must elapse before a delay qualifies as 'significant,'

though courts have frequently found that delays of less than one year may be so deemed.").

Thus, this factor favors dismissal.

    2.    Notice to Plaintiff of Risk of Dismissal

Plaintiff received ample notice that "further delays would result in dismissal." *Drake*,

375 F.3d at 255 (internal quotation marks omitted). During a December 6, 2018 telephonic

conference regarding Plaintiff's failure to produce a medical-records release, the Court warned

Mr. Finkelstein in no uncertain terms that "[i]f you fail to provide the defendants with a HIPAA

release by the 13th [of December, 2018], you . . . run the risk that the sanction for failure to

comply is going to be dismissal of the case." Dkt. 69 at 6. The Court reiterated that warning at

the conference's end, telling Mr. Finkelstein that "I'm not going to sanction you for failing to

comply with the HIPAA release [deadline] but you've got a new deadline and if you fail to meet

that deadline I am giving you notice now that the sanction may well be dismissal of this lawsuit."

*Id.* at 14. Mr. Finkelstein replied, "Yes, I understand, your Honor." *Id.* This unquestionably

constituted "notice that [Plaintiff's] case would be dismissed if there was *further* delay." *Drake*,

375 F.3d at 255.

    3.    Prejudice to Defendants

Plaintiff's failure to prosecute has already substantially prejudiced Defendants. By

failing to execute a valid medical-records release, Plaintiff has deprived Defendants of discovery

fundamental to Plaintiff's claims and Defendant's defenses: information demonstrating whether

she is actually an individual with a disability to whom the ADA, the NYCHRL, and the

NYSHRL apply. *See, e.g.*, *Vazquez v. Davis*, No. 12-CV-7630, 2014 WL 5089457, at *5

(S.D.N.Y. Sept. 19, 2014) (order adopting Magistrate Judge's Report and Recommendation)

("The defendants cannot engage in investigation, depose witnesses, or prepare defenses to this action because the plaintiff has not provided them with the most basic discovery. Accordingly this factor also weighs in favor of dismissal."). And Defendants have already expended significant resources attempting to extract discovery from Plaintiff to which they are entitled, not only sending three lawyers (each representing one of the subgroups of Defendants) to attend an initial pre-trial conference with the undersigned to set a discovery schedule but also to attend a meet-and-confer with Mr. Finkelstein regarding the parties' internal discovery deadlines, *see* Dkt. 69 (transcript of December 6, 2018 telephone conference) at 6-11 (recounting in-person meeting between counsel), and the December 6, 2018 telephone conference with the Court regarding Plaintiff's failure to produce a medical-records release by the Court's initial November 29, 2018 deadline, *see id.* at 2-6. Defendants have devoted substantial resources litigating this case while Plaintiff has seen fit to abandon her lawsuit and decline to produce even the most basic discovery. This factor therefore favors dismissal. *See, e.g.*, *Yadav v. Brookhaven Nat'l Lab.*, 487 F. App'x 671, 673 (2d Cir. 2012) (affirming Rule 41(b) dismissal where "defendants were prejudiced by having to expend unnecessary time and resources in attempting to secure responses to their discovery requests, some of which they never received").

4. Court Congestion Balanced Against Plaintiff's Opportunity to Proceed

This factor weakly favors Defendants. Although Plaintiff's absence from the litigation and her failure to execute a medical-records release have themselves been generally "silent and unobtrusive rather than vexatious and burdensome," *LeSane*, 239 F.3d at 210, her inaction has placed "'a burden on judicial resources'" because it has "put[] the court in a position where it must waste time issuing multiple orders," some on Defendants' motion, to attempt to remedy the issue, in addition to holding a conference call to resolve Plaintiff's failure to execute a medical-records release, *United States v. Gellerstein*, No. 08-CV-2702, 2011 WL 710446, at *7

(E.D.N.Y. Feb. 22, 2011) (quoting *Capellan v. Dep't of Homeland Sec.*, No. 06-CV-2551, 2008 WL 2512491, at *4 (S.D.N.Y. June 13, 2009) ("[T]he Court issued multiple orders arising from Plaintiffs' failure to prosecute and has devoted significant attention to this case. Plaintiffs' failure to prosecute has therefore been a burden on limited judicial resources.")); *see also* Dkt. 54 (December 6, 2018 post-conference order sanctioning Mr. Finkelstein and extending deadline for Plaintiff to produce a medical-records release); Dkt. 57 (December 17, 2018 order directing Mr. Finkelstein to show cause why case should not be dismissed with prejudice under Rule 37(b) and other sanctions imposed for repeated failures to produce medical-records release); Dkt. 60 (ordering Mr. Finkelstein to submit another affidavit clarifying his last contact with Plaintiff and his efforts to reach her); Dkt. 62 (January 8, 2019 order directing Mr. Finkelstein to show cause why case should not be dismissed with prejudice under Rule 41(b) due to Plaintiff's absence and consequent failures to produce medical-records release). And although briefing the question whether a case should be dismissed is ordinarily not a vexatious enterprise—it is, after all, routine under Federal Rule of Civil Procedure 12—Mr. Finkelstein's submissions on that question in this case have amounted to little more than hot air: Mr. Finkelstein implores that any dismissal of this case be without prejudice, yet, inexplicably, he agreed to voluntarily dismiss another of Plaintiff's cases pending before the undersigned *with prejudice* only two weeks ago, *see* Stipulation of Dismissal [Dkt. 47], *Burgess v. Two Charlton Owners Corp.*, No. 18-CV-5955 (S.D.N.Y. Jan. 29, 2019),[2] and did the same in another case pending before another Southern District judge just a few weeks before that, *see also* Stipulation of Dismissal [Dkt. 49], *Burgess v. Jakobsen*, No. 18-CV-5001 (S.D.N.Y. Jan. 4, 2019). In light of the inconsistent positions counsel has taken on whether a dismissal should be with or without prejudice, the Court

---

[2] The Court confirmed with the parties that the case was not voluntarily dismissed as part of a settlement of the litigation. *See* Dkts. 43-46, *Burgess v. Two Charlton Owners Corp.*, No. 18-CV-5955 (S.D.N.Y.).

concludes that Mr. Finkelstein's briefing on the proper disposition of this case has been vexatious, thereby multiplying the burden Plaintiff's failure to prosecute has already imposed on this Court's limited resources. *See Vexatious*, Black's Law Dictionary (10th ed. 2014) ("without reasonable or probable cause or excuse; harassing; annoying").[3]

5. Efficacy of Lesser Sanctions

Sanctions other than dismissal would not be effective at remedying Plaintiff's failure to prosecute. "Plaintiff's disappearance, and the court's corresponding inability to communicate with Plaintiff in any way, renders any lesser sanctions entirely futile in motivating Plaintiff to advance this litigation." *Robinson v. United States*, No. 03-CV-1001, 2005 WL 2234051, at *2 (S.D.N.Y. Sept. 8, 2005); *see also Dong v. United States*, No. 02-CV-7751, 2004 WL 385117, at *3 (S.D.N.Y. Mar. 2, 2004) (dismissing case with prejudice under Rule 41(b) because "warning" plaintiff or "order[ing] him to appear for a hearing" is ineffective where court has "no way to reach him"). Nor would any lesser sanction induce Mr. Finkelstein to procure his client's participation in this litigation: if he has indeed lost all contact with her, then he cannot persuade her to appear or execute a medical-records release. And in any case, lesser sanctions against Mr. Finkelstein have already proven ineffectual at achieving Plaintiff's compliance with this Court's discovery orders. *See* Dkt. 54 at 2 (December 6, 2018 order directing Mr. Finkelstein to pay $1000 civil sanction under Fed. R. Civ. P. 16(f)(1)(C)); Dkt. 55 (December 13, 2018 letter from Mr. Finkelstein informing Court without further explanation that although he was "very mindful of [Court's] statement regarding dismissal of the matter if [medical-records release] was not

---

[3] In contrast, an ethically minded attorney genuinely interested in preserving a missing client's rights would have, for example, proposed to his adversaries a voluntary dismissal without prejudice under Fed. R. Civ. P. 41(a)(1)(A)(ii) or, barring that, written the Court seeking either a stay of proceedings while he tracked down his client or an extension of time to produce a medical-records release. And he would have done all this *before the deadline for producing the release expired*.

submitted to defense counsel by today's date," he was nonetheless "unable to procure the HIPPA [*sic*] authorization from [his] client").

Dismissal with prejudice, moreover, is the most appropriate sanction. Plaintiff has already been warned that because she bears the burden of demonstrating that she is an individual with a disability under the ADA, NYCHRL, and NYSHRL, and because a release of her medical records is an essential step in permitting Defendants to ascertain whether she can meet that burden, "the case cannot proceed without [her] participation." *Watkins v. Matarazzo*, No. 13-CV-2477, 2015 WL 13745762, at *8 (S.D.N.Y. Sept. 22, 2015) (R. & R.), *adopted by* 2016 WL 3351079 (S.D.N.Y. June 14, 2016); *see* Dkt. 69 (transcript of December 6, 2018 telephone conference) at 13-14 (THE COURT: . . . "Ms. Burgess is a plaintiff in this lawsuit. All you need to do is tell her that in order to pursue this lawsuit she has to provide a HIPAA release. You send her the HIPAA release. You tell her if she wants to pursue this lawsuit she's got to figure out how to get it to a notary, get it notarized and mail it back to you."). Yet Plaintiff has nonetheless elected to abandon her lawsuit. In light of this intransigence, and in light of Plaintiff's apparent willingness to abandon five lawsuits pending in this Court alone, *see* Dkt. 57 at 3 n.1, the Court is unpersuaded that dismissal with the option to refile will adequately deter Plaintiff from further failures to prosecute.[4]

---

[4]     Mr. Finkelstein is wrong that dismissal with prejudice will "preclude[e] a segment of society, i.e., the disabled, from ever bringing suit against [Defendants' alleged] Facility." Dkt. 63 (Pl.'s Mem. of Law in Resp. to OTSC) at 3. Although this order will preclude *Plaintiff* from suing Defendants for alleged ADA, NYCHRL, and NYSHRL violations at the premises to which Mr. Finkelstein refers, any other person with a disability—including one genuinely interested in prosecuting a case—remains free to do so.

In this connection, because the Court dismisses this case with prejudice under Rule 41(b), it need not resolve the parties' extensive back-and-forth regarding Mr. Finkelstein's contention that Defendants "operate a facility that is blatantly and flagrantly in total disregard of the Americans with Disabilities Act for facilities of public accommodation." *Id.* at 2; Dkt. 68 (Mem. in Supp. of "Mot. to Dismiss") at 5-8; Dkt. 71 (Resp. to "Mot. to Dismiss") ¶¶ 2-10. The Court need not and does not express any opinion on the merits of Plaintiff's suit.

Finally, the Court denies Defendants' request for attorneys' fees and costs, although it is close call. *See* Dkt. 68 (Mem. in Supp. of "Mot. to Dismiss") at 8-9. Given Plaintiff's disappearance, any order against her for fees

**CONCLUSION**

For the foregoing reasons, this case is dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate all open motions and close the case.

**SO ORDERED.**

_____
Date:  **February 20, 2019**                                      **VALERIE CAPRONI**
           **New York, New York**                                 **United States District Judge**

---

and costs would essentially be unenforceable.  And inasmuch as Mr. Finkelstein has been unable to procure his client's participation in the face of lesser sanctions, an order directing him to pay Defendants' fees and costs seems less appropriate a remedy than dismissing the case with prejudice.  Were the Court not inclined to dismiss with prejudice, however, it might very well conclude that taxing fees and costs against Mr. Finkelstein and his client would be appropriate.